IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WILMA JOYCE JOHNSON                                                                           PLAINTIFF

      V.                              Civil No. 2:23-cv-02137-PKH-MEF

MARTIN O'MALLEY, Commissioner,
Social Security Administration                                                                DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Wilma Johnson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.     Procedural Background

Plaintiff filed her application for DIB on December 2, 2020, alleging disability since July 30, 2019, due to an overactive bladder, neuropathy, depression, anxiety, hypertension, and acid reflux. (ECF No. 11, pp. 86, 101, 196-206, 233, 250-251). The Commissioner denied Plaintiff's applications initially and on reconsideration, and an administrative hearing was held on July 21, 2022. (*Id*. at 47-82). Plaintiff was present and represented by counsel.

On her alleged onset date, Plaintiff was 58 years old and possessed the equivalent of a high school diploma. (ECF No. 11, pp. 85). She had past relevant work ("PRW") experience as a receptionist and admissions evaluator. (*Id*. at 35-36, 222, 234-235, 242-249).

On September 27, 2022, Administrative Law Judge ("ALJ") Elisabeth McGee identified Plaintiff's asthma, morbid obesity, severe right flat foot, and peripheral neuropathy as severe impairments. (ECF No. 11, p. 27). She concluded, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 30). ALJ McGee found Plaintiff capable of performing sedentary work with occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps/stairs; no climbing ladders/ropes/scaffolds; and no concentrated exposure to dust, fumes, other pulmonary irritates, heat, or humidity. (*Id*.). With the assistance of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her PRW as a receptionist and admissions evaluator. (*Id*. at 35).

On August 21, 2023, the Appeals Council denied Plaintiff's request for review.[1] (ECF No. 11, pp.11-16). Plaintiff subsequently filed her Complaint to initiate this action. (ECF No. 3). Both parties have filed appeal briefs (ECF Nos. 13, 15, 16), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II.   Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the

---

[1] Plaintiff received a 30-day extension from the Appeals Council to file her Complaint. (ECF No. 11, pp. 6-7).

record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). If the final stage of the analysis is reached, the fact finder considers the Plaintiff's age, education, and work experience in determining her residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Plaintiff raises a single issue on appeal: whether the ALJ properly concluded that her overactive bladder and urinary incontinence were non-severe impairments. At Step Two, a claimant has the burden of providing evidence of functional limitations in support of their contention of disability. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

Plaintiff contends that her urinary impairments are severe, as they require her to remain near a restroom and to take frequent unscheduled restroom breaks. She testified that despite having undergone a bladder sling procedure in 2017, she still experiences both urinary frequency and urge incontinence, meaning once she feels the urge to urinate, she cannot control her bladder. (ECF No. 11, pp. 61-62). According to the Plaintiff, the medications prescribed are ineffective, as she urinates each time she stands, walks, sneezes, or coughs. (*Id*. at 61-62, 277). Despite wearing multiple layers of protection and sitting down to groom herself, perform household tasks, and play the keyboard at church, she experiences frequent accidents. (*Id*. at 254-261).

Similar sentiments were echoed on her pain questionnaire, wherein she also reported uncomfortable bladder spasms and accidents requiring her to change clothing numerous times per day. (*Id*. at 276). Further, the Plaintiff indicated that her doctors had advised her that Botox and a bladder pacemaker were her only remaining treatment options.

4

The medical evidence also provides support for her statements. Records dating back to at least 2017 document her complaints of urinary incontinence and frequency following an unsuccessful bladder sling procedure. (ECF No. 11, pp. 378-380). In February 2020, advanced practice nurse Timbi West treated her for recurrent urinary complaints despite taking Toviaz and over-the-counter Azo. Although Nurse West's examination of the Plaintiff revealed no abnormalities, there is no indication that she conducted a urology exam. The nurse prescribed Detrol and advised the Plaintiff to return as needed if her symptoms persisted.

Plaintiff returned for treatment in June with persistent symptomology. (ECF No. 11, pp. 370-373). Nurse West noted her purse was full of sanitary napkins because she had to change them frequently. At that time, Plaintiff had gained some weight due to COVID restrictions. Noting that weight loss could markedly improve her edema, foot pain, and incontinence, Nurse West recommended nutritious meals to lose weight and prescribed Lasix to help with the edema. When the Plaintiff renewed her complaints the following month, she had begun exercising and dieting, having achieved some weight loss. (*Id*. at 367-369). Nurse West prescribed Toviaz.

In August 2020, Plaintiff indicated she was not taking the Lasix because it exacerbated her urinary incontinence. (ECF No. 11, pp. 364-366). She reiterated her persistent urinary symptoms, namely urine leakage when getting out of bed or up from her chair. Because the Toviaz was quite expensive, Nurse West switched her to Detrol and referred her to urology.

In September, the Plaintiff conferred with physician's assistant, Lauren Satterfield at the Baptist Health Urology Clinic. (ECF No. 11, pp. 429-434). She reported constant urine leakage when she stood up or placed any pressure on her bladder, and an inability to make it to the restroom once the urge presented itself. Plaintiff indicated that she used four to five pads at a time whenever

5

she left home to protect her clothing. An exam documented leakage of urine with coughing. PA Satterfield scheduled the Plaintiff for a cystoscopy and prescribed a trial of Solifenacin (Vesicare).

Dr. Kyle Basham conducted a cystoscopy on November 5, 2020. (ECF No. 11, pp. 435-439). He noted no stress urinary incontinence while lying on her back, indicating no intrinsic urethral sphincter dysfunction, and no exposed mesh. *See* Thomas H. S. Hsu, et al., *The Supine Stress Test: A Simple Method to Detect Intrinsic Urethral Sphincter Dysfunction*, 162 J. OF UROLOGY, Issue 2, at 460-463 (1999), *at* https://www.auajournals.org/doi/10.1016/S0022-5347%2805%2968589-8 (last accessed July 25, 2024). Her ureteral orifices were normal in position and clear, no bladder stones or tumors were present, and there were no abnormalities in the bladder wall. As such, Dr. Basham concluded that her symptoms were more suggestive or urge incontinence than stress incontinence. Because Vesicare had provided only minimal improvement, he noted her interest in pursuing Botox injections.

The Plaintiff returned to Nurse West in February 2021 with continued complaints. (ECF. No. 11, pp. 359-363). Aside from pain in the right ankle with range of motion and weightbearing, her physical exam remained unremarkable. Because her previous medication had been ineffective, Nurse West switched her to Vesicare.

In addition to her medical records, the record contains two RFC assessments prepared by agency physicians. Dr. Rita Allbright conducted a review of the record on March 23, 2021. (ECF No. 11, pp. 93-96). Noting no other opinion evidence of record, she concluded the Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand, and walk about 6 hours in an 8-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. She further opined that Plaintiff's urinary issues only mildly limited her ability to perform work-related tasks.

Following an independent review of the record on August 31, Dr. Darrin Campo agreed Plaintiff could perform light work with occasional posturals. (ECF No. 11, pp. 104-106). However, he also added environmental restrictions to account for her asthma, noting she should have no concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, or hazards such as heights and machinery. For unknown reasons, however, he failed to mention her urinary symptoms.

In further support of her contention that her urinary impairments would impact her ability to perform work, Plaintiff submitted vocational rehabilitation evaluations from two consultants, Kerri Moran and Karen Starr, dated August 5, 2022, and August 11, 2022, respectively. (ECF No. 11, pp. 346-355). Both consultants indicated that her need to have a restroom within 10 seconds of her workspace would constitute an unreasonable special work accommodation.

The ALJ ultimately concluded that Plaintiff's stress/urge incontinence was not severe for several reasons. (ECF No. 11, pp. 27-28). First, he noted that her symptoms were at least somewhat amenable to treatment via medication with no indication that further surgery was warranted. The ALJ also cited Nurse West's statement that weight loss would "markedly improve" her symptoms. And he concluded with the unremarkable results of her cystoscopy and Dr. Basham's exam. However, a clear cystoscopy merely means that there were no abnormalities within her bladder. It does not undermine the fact that the Plaintiff suffers from urge incontinence and urinary frequency. Dr. Basham even noted only minimal improvement with medication.

Further, there is nothing in the record to suggest that the Plaintiff exaggerated her symptoms or that her physicians questioned the veracity of her subjective reports. Instead, they documented her complaints and treated her accordingly. And, while the record does not make clear the exact work limitations that would result from her symptoms, at the very least, it seems

7

clear she would need the ability to take unscheduled restroom breaks. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (ALJ's RFC determination must be supported by medical evidence that addresses claimant's ability to function in workplace). Sanitation concerns could also pose a problem for potential employers, as Plaintiff reported frequent accidents both while seated and standing.

Accordingly, remand is necessary for the ALJ to reassess both the severity of the Plaintiff's urinary symptoms and her RFC. In so doing, we recommend the ALJ obtain an RFC from Dr. Basham and/or Nurse West. If they are unable or otherwise unable to provide an assessment, then the ALJ should obtain a consultative exam complete with an RFC assessment that addresses the impact of the Plaintiff's urinary symptoms. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ is required to order tests and medical examinations when medical records provide insufficient evidence to determine disability).

### IV.   Conclusion

Based on the foregoing, I recommend reversing and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of July 2024.

/s/ *Mark E. Ford*
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE